**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  | |  |
|---|---|---|
|  | * | |
| INGRIS CORNEJO CASTRO, | * | |
| Petitioner, | * | |
| v. | * | Civ. No. 1:26-cv-00985-PX |
| KRISTI NOEM *et al*., | * | |
| Respondents. | * | |

\*\*\*

**<u>MEMORANDUM ORDER</u>**

Pending is Petitioner Ingris Cornejo Castro ("Cornejo Castro")'s Second Amended Petition for a Writ of Habeas Corpus.  ECF No. 19.  After full briefing and a hearing on the merits, the Petition is granted.

Cornejo Castro is a citizen of Honduras.  ECF No. 19 ¶ 6.  She entered the United States without authorization and consequently, U.S. Immigration and Customs Enforcement ("ICE") returned her to Honduras on September 11, 2015, pursuant to an Order of Expedited Removal. ECF No. 12-1 at 2.  Sometime in early 2019, Cornejo Castro re-entered the United States with her minor daughter, fleeing persecution in Honduras.  ECF No. 19 ¶ 11.  Cornejo Castro was detained at the border and the 2015 order of removal was reinstated; but ICE released Cornejo Castro into the United States on an Order of Supervision requiring her to report to its offices annually.  ECF No. 19 at ¶¶ 11–12.  The Court has requested Respondents to produce the 2019 reinstated order of removal to no avail.

Cornejo Castro subsequently filed an I-589 application for asylum or alternatively statutory withholding of removal or pursuant to the Convention Against Torture ("CAT").  ECF No. 9 at 2.

1

Cornejo Castro also recalls an asylum officer concluding that she faces a credible fear of return to Honduras, and so the I-589 application was referred to United States Citizenship and Immigration Services ("USCIS") in July 2019.  ECF No. 19-1 at 2.  As far as the parties know, the I-589 is pending adjudication.  ECF No. 17.  In the meanwhile, Respondents also granted Cornejo Castro work authorization, and she has lawfully obtained a social security number.  ECF No. 19-1 at 2. Cornejo Castro has lived and worked without incident and has complied with all conditions that ICE has imposed upon her.

Despite this compliance, in November 2025, ICE placed additional conditions on Cornejo Castro.  ECF No. 12-3.  ICE enrolled her in the Intensive Supervision Appearance Program ("ISAP") requiring her to report to ICE on a monthly basis and wear a GPS ankle monitor.  ECF No. 19-1 at 2 & ECF No. 19 ¶¶ 11-12.[1]  About four months later, on March 6, 2026, ICE detained Cornejo Castro during a routine check-in, even though she had been in full compliance with the ISAP.  ECF No. 19 ¶ 13; ECF No. 19-1 at 2.  When Cornejo Castro asked why she was being detained, especially considering her pending I-589 proceedings, the ICE officer told her the "asylum officer['s] findings did not matter" to ICE.  ECF No. 19-1 at 2.  Cornejo Castro next asked if she could use her cell phone to arrange for the care of her four-year-old son.  *Id.*  The ICE officer denied the request, grabbed Cornejo Castro's arm tightly, threatened to "screw you over, bitch," and separately threw her cell phone on the table.  *Id*.

While in custody, Respondents contend they presented Cornejo Castro with a Warrant of Removal (ECF No. 12-2), a Notice of Revocation of Release ("NRR") (ECF No. 12-3), and the "Notice of Intent/Decision to Reinstate Prior Order" of removal (ECF No. 12-4).  The Notice of Intent/Decision to Reinstate Prior Order," however, makes little sense considering Cornejo

---

[1] The Second Amended Petition states that Cornejo Castro was installed on the ankle monitor through ISAP in November of 2023, but that appears to be a typo.  ECF No. 20 at 4; ECF No. 12-3.

Castro's return in 2019. Specifically, the Order makes it appear as if Respondents have reinstated the original 2015 removal order which, according to the parties, had already been reinstated upon her return in 2019. *Id.;* ECF No. 19 ¶ 11; ECF No. 20 at 4. The Notice also does not make any reference to Cornejo Castro's pending I-589 proceedings which, if found in her favor, would protect Cornejo Castro from removal to Honduras.

Despite this, the NRR purportedly warns Cornejo Castro that ICE intends to revoke her release pursuant to 8 C.F.R. § 241.4(*l*) because "the purposes of release have been served," and "ICE is seeking a travel document to effect [Cornejo Castro's] expeditious removal to *Honduras*"—the very country for which USCIS determined she maintains a credible fear of return, hence her I-589 proceedings. ECF No. 12-3; ECF No. 19-1 at 2. The Notice was also signed by Nikita Baker who held herself out as the "Acting Field Office Director," even though she was not at that time. *Id. Cf. Marroquin Escobar v. Noem et al.*, 1:26-cv-00590-PX at ECF No. 22 (D. Md. April 24, 2026).

Last, ICE claims to have given Cornejo Castro an "Alien Informational Interview" on the same day she was detained so she could present arguments in favor of her release. ECF No. 12-5. But nothing in the form supports that an officer actually spoke with Cornejo Castro. *Id.* Cornejo Castro also swears that ICE never told her why she was being detained or gave her an opportunity to be heard. ECF No. 19-2 at 1. Rather, ICE quickly transported her to a cell holding 60 other women, some of whom had been there for days*,* and next swiftly removed her to a detention center in Seattle. ECF No. 19-1 at 2.

Approximately one month later, an ICE officer told Cornejo Castro she could "only be detained for 90 days" and that they needed her "documents, identification and passport." ECF No. 19-1 at 3. That ICE officer also asked Cornejo Castro if she "wanted to go to Mexico," to which

she asked why ICE would send her to Mexico if she had "passed her credible fear interview in 2019." *Id.* The officer responded that ICE has searched for the "credible fear record in the system but . . . could not find it." *Id.* The ICE officer also presented documents in English to Cornejo Castro which she could not read and did not sign. The officer also told her she would receive a "new" credible fear interview, but this has yet to happen. *Id.*

Cornejo Castro now petitions the Court to order her immediate release, principally because ICE detained her absent notice and an opportunity to be heard, and in violation of its own regulations designed to afford a modicum of process in advance of detention. ECF No. 19 ¶¶ 20–29. Respondents' main retort is that because Cornejo Castro is subject to a final order of removal, 8 U. S.C. § 1231(a)(6) permits her detention for the "period reasonably necessary to bring about the alien's removal from the United States." ECF No. 20 at 2, 3. Were this case so simple.

For one, Respondents have not adequately explained on what authority they seek to remove Cornejo Castro or how removal intersects with her pending I-589 for relief *from* such removal. Respondents, for example, agree that Cornejo Castro returned in 2019, at which time her 2015 order was reinstated, but they cannot produce the 2019 reinstated order of removal. They also claim not to have access to any information regarding her I-589 application or subsequent proceedings. ECF No. 17. Although counsel for Respondents suggests that he could confirm the existence of such proceedings, nothing has been produced. *Id*. Accordingly, absent further explanation, the Court cannot square how ICE can at once *lawfully* detain Cornejo Castro to effectuate her "expeditious removal to Honduras," and also afford her the opportunity to demonstrate that withholding of the same removal is warranted in an I-589 proceeding. At a minimum, the yawning evidentiary gaps raise serious questions as to whether Cornejo Castro's

4

lawful removal is reasonably foreseeable for which continued detention is constitutionally permissible. *See Zadvydas v. Davis*, 533 U.S. 678, 680 (2001)

Second, even if the procedural history of Cornejo Castro's case were straightforward, Respondents have failed to afford Cornejo Castro notice and an opportunity to be heard prior to revoking that release, as required under 8 C.F.R. § 241.4(*l*).  If an agency fails to "afford an individual procedural safeguards required under its own regulations" the agency action may be invalidated if "the petitioner can demonstrate "prejudice resulting from the violation." *United States v. Morgan*, 193 F.3d 252, 266–67 (4th Cir. 1999); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954).  Prejudice is "presume[d]" however, where "an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created, but then not followed by an agency." *Delgado-Corea v. Imig. & Naturalization Serv.*, 804 F.2d 261, 263 (4th Cir. 1986).

Section 8 C.F.R. § 241.4(*l*) requires that revocation of release conditions be approved by the ICE District Director, as delegated to the Field Office Director[2], and only if the Field Office Director concludes that "revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner."  8 C.F.R. § 241.4(*l*)(2). Further, ICE must inform the noncitizen of the reasons for her detention and allow her to be heard upon revocation. *Id.  See also Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025); 8 C.F.R. § 241.4(*l*)(2) (The noncitizen will be "afforded an initial informal interview promptly after his or her return to Service custody to afford the alien

---

[2] Separate regulatory authority confers to the ICE Director the power to delegate this determination to Field Office Directors, but not to lower ranked officers. *See, e.g., Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 161 (W.D.N.Y. 2025); *Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2841886, at *4 (D. Md. Oct. 7, 2025).

an opportunity to respond to the reasons for revocation stated in the notification.").  Respondents gave Cornejo Castro no such protections.

First, the NRR is not signed by the Acting Field Office Director, Vernon Liggins.  Rather, *former* Acting Field Office Director, Nikita Baker, signed the document.  The Court knows from other cases that raised similar challenges during this period that Baker was not the Acting Field Office Director at that time and Respondents failed to demonstrate any lawful basis for Liggins to have delegated his authority.  *See Vasquez Tejada v. Liggins et al.*, 8:26-cv-00952-PX at ECF No. 20 (D. Md. Apr. 20, 2026) and *Marroquin Escobar v. Noem et al.*, 1:26-cv-00590-PX at ECF No. 22 (D. Md. April 24, 2026).  Accordingly, nothing demonstrates that the Acting Field Director determined Cornejo Castro's revocation was in the public interest and circumstances prevented referral to the Executive Associate Commissioner as the regulation requires.  *See* 8 C.F.R. § 241.1(l).  Rather, ICE wholly failed to adhere to the regulatory framework that is the necessary precondition to revoking Petitioner's release.  *Cf. Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 162 (W.D.N.Y. 2025) (finding that "even if" Assistant Field Office Director had proper authority to revoke release, "there is no evidence that [Assistant Field Office Director] made the findings that a district director is required to make *before* revoking [petitioner's] release.") (emphasis added).

Nor did ICE give Cornejo Castro a meaningful opportunity to be heard.  Cornejo Castro attests that no one sought her input regarding the bases for her detention or release.  ECF No. 19-1.  The "Alien Informal Interview" form corroborates as much in that the section used to summarize the interview is blank.  ECF No. 12-5.  From this, the Court cannot conclude that ICE complied with its own regulations or offered Cornejo Castro a modicum of due process in advance of his detention.

For these reasons, the Court joins the growing chorus of district courts that have concluded Respondents' failure to follow its own regulations concerning revocation of release violates the *Accardi* doctrine. *See, e.g.*, *Samahn v. Noem et al.*, No. 25-CV-25618, 2026 WL 911290, at *6 (S.D. Fla. Apr. 2, 2026); *Ahmed v. Olson*, No. CV 26-89-DLB, 2026 WL 836123, at *5 (E.D. Ky. Mar. 26, 2026); *Sombuoune Virachak* v. *Juan Baltazar et al.*, No. 26-CV-00391-STV, 2026 WL 746285, at *4–5 (D. Colo. Mar. 17, 2026); *Alcivar Lorenzo*, 2026 WL 369349, at *6; *Rodriguez Romero v. Ladwig*, No. CV 25-1106-JWD-EWD, 2026 WL 321437, at *7–8 (M.D. La. Feb. 6, 2026); *Arman Kesheshian v. Kristi Noem et al.*, No. 5:25-CV-03478-MWC-DFM, 2025 WL 4227216, at *5 (C.D. Cal. Dec. 24, 2025); *N.A.L.R. v. Bondi*, No. 4:25-CV-00192-SEB-KMB, 2025 WL 2987239, at *2 (S.D. Ind. Oct. 23, 2025); *K.E.O. v. Woosley*, No. 4:25-CV-74-RGJ, 2025 WL 2553394, at *5 (W.D. Ky. Sept. 4, 2025). Although, "not every technical failure to comply with policies or procedures violates the Constitution," where the regulations safeguard against unconstitutional deprivations of liberty, they must be followed. *Santamaria Orellana*, 2025 WL 2841886, at *5. *See also Ceesay*, 781 F. Supp. 3d at 162; *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *10 (D. Or. Aug. 21, 2025). Here, they were not. As a result, Cornejo Castro was detained without due process for which the remedy is immediate release.

Accordingly, it is this 2nd day of July 2026, by the United States District Court for the District of Maryland, hereby **ORDERED** that:

1. Petitioner Ingris Cornejo Castro's Petition for a Writ of Habeas Corpus, ECF No. 19, is **GRANTED**;

2. Respondents are **DIRECTED** to release Cornejo Castro on or before July 7, 2026, at 5:00 PM, under the same ICE supervision conditions in place prior to her March 6, 2026, detention;

3. The parties **SHALL** file a Joint Status Report by July 9, 2026, to confirm Cornejo Castro has been released from detention;

4. In light of the peculiar gaps in the evidentiary record regarding Cornejo Castro's current immigration status, within **14 days** from the date of this Order, Respondents are **DIRECTED** to produce to counsel for Cornejo Castro and this Court a complete copy of Cornejo Castro's immigration file or "A-file;" to include all documents concerning her I-589 application, credible fear interview, and subsequent proceedings, as well as the 2019 reinstated order of removal;[3] and

5. If Respondents intend to re-detain Cornejo Castro in advance of lawful removal, Respondents must first file a status report with the Court articulating steps they will take to comply with 8 C.F.R. § 241.4(l) and due process, consistent with this Order; and

6. The Court shall **RETAIN** jurisdiction of this matter to enforce compliance.


_____/s/_____
Paula Xinis
United States District Judge

---

[3] Counsel for Respondents SHALL contact chambers to received further instruction on how to transmit the A-file to the Court.